**FIRST NAT. BANK OF DILLON, MONT., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 7462.

Circuit Court of Appeals, Ninth Circuit.
May 6, 1935.

Peter S. Rask and P. J. Coffey, both of Minneapolis, Minn., and T. E. Gilbert, of Dillon, Mont., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Louise Foster, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

This is a petition to review the action of the Board of Tax Appeals sustaining the decision of the Commissioner of Internal Revenue disallowing certain deductions from gross income claimed by the petitioner by reason of bad debts amounting to $76,825. The amount of tax involved is $8,300.63 for the year 1929. It is conceded that the debts involved were worthless, and if the debts belonged to the petitioner it was entitled to the deduction claimed for the year 1929.

In the year 1912, petitioner was engaged in the general banking business at Dillon, Mont. It was desired by the officials of the bank to make loans which the bank, as such, was not authorized to make. To overcome this difficulty, the bank officials determined to procure a fund for the purpose of making such loans. Dividends were declared, and, instead of paying the amount of the dividends to the stockholders, the aggregate amount in the first instance, $50,000, from the dividend declared January 8, 1913, was impounded in a special account designed as "Stockholders' Account." This was called a nonledger account, and, although carried on books kept in the bank, was not kept in the ordinary bank books. This fund was augmented from time to time by profits derived from loans made therefrom and by additional dividends declared by the petitioner until November 12, 1929, when the balance in this account was $261,934.11, consisting of $9,400 cash and the balance in promissory notes evidencing loans made from the fund. From the conduct of the affairs of the bank and the stockholders' fund it was assumed that the transfer of the stock carried a corresponding interest in the stockholders' account, but on November 12, 1929, an arrangement was made by which the Northwest Bancorporation, a holding company (hereinafter referred to as "the holding company"), purchased a large proportion of the shares of stock in the petitioner. Holders of 1,705 of the 2,000 shares of stock in the petitioner bank entered into an agreement to sell their stock to the holding company, and the 1,705 shares of stock were to be exchanged for stock in the holding company in the ratio of 1 share of stock in the bank for 8¾ shares in the holding company. By December 31, 1929, the amount of stock owned by the holding company was increased to 1,930 shares of the total outstanding stock in the bank, but it is not shown that the holders of stock purchased after November 12, 1929, joined in the agreement of that date. The agreement for exchange contained the following reference to the stockholders' account: "In addition to the assets which are shown on the books of the bank, there are certain other assets owned by the bank which are carried in accounts designated 'Stockholders' Fund,' 'Interest Account,' and 'Charged-Off Assets,' respectively. The shareholders agree that all such assets shall become assets of the bank."

It is conceded that at the time of the transaction, although the contract refers to the stockholders' account as owned by the bank, that up to the time of the transfer it was in fact owned by the stockholders, of the bank in proportion to their stock in the bank; that the agreement providing that the account "shall become the assets of the bank" in effect transferred the legal title thereto to the bank, and that the bank thus acquired the obligations subsequently ascertained to be worthless and which it claimed the right to deduct from its gross income for the year 1929. The outstanding promissory notes in the stockholders' account were not otherwise transferred to the bank. It is not clear from the record whether or not these notes were promissory notes payable to the bank. It may be readily conceded that the contract whereby the holding company exchanged its stock for the stock in the bank, and incidentally thus acquired title to the assets in the stockholders' account, and by which it agreed with the sellers of the stock that the assets thus acquired should belong to the bank, was a contract made by third parties for the benefit of the bank and would be sufficient to vest in the bank the interest in the stockholders' account which was acquired by the holding company as a part of the transfer. This conclusion, however, does not solve the difficulty. It is conceded by the parties that up to the time of this transaction the stockholders' account was in effect an association taxable as such under the revenue laws of the United States. The government contends that it remains such

a taxable unit after the transfer, but the bank contends that the situation was changed by reason of the contract between the holding company and the stockholders so that the separate taxable unit was practically abandoned. It claims that after the transaction the bank dealt with the funds as its own. This position, however, is not justified by the record. The bank after the transaction had possession of the assets, books, notes, and records of the stockholders' account, but this was true before the transaction of November 12, 1929. J. H. Gilbert testified: "The assets of the Stockholders' Account or funds were carried on the books of the bank, being treated as non-ledger assets of the bank. All the assets of the Stockholders' Account were treated as non-ledger assets of the bank. * * * The method of keeping the Stockholders' Account is as it was. There has been no change so far as the records are concerned in the method of keeping it."

This testimony justified the decision of the Board of Tax Appeals, notwithstanding the fact that the bank, after the transfer, exercised ownership over a portion of the funds in the stockholders' account. The decision of the Board of Tax Appeals that the bad loans of the stockholders' account were not deductible from the gross income of the bank for the purpose of taxation is affirmed.

Affirmed.